## STATE ex rel. CALDWELL v. VAUGHN et al.

No. 4207. Opinion Filed July 30, 1912.

(125 Pac. 899.)

1. **PROHIBITION—Jurisdiction.** The district and superior courts of the state have power to issue writs of prohibition to inferior courts and bodies exercising judicial power to restrain them from exercising powers not granted to them.

2. **SAME—Nature of Remedy—Ministerial Functions.** The writ of prohibition will not lie to an executive or ministerial board to control or regulate it in the performance of a ministerial or executive function.

3. **SAME—Judicial Powers—Primary Elections—Duties of Officers.** A county election board, in placing upon the ballots for a primary election the names of candidates for nomination by the dif-

ferent political parties for the different officers to be elected by the county, is engaged in the performance of a ministerial duty and does not exercise judicial power.

(Syllabus by the Court.)

*Error from Superior Court, Custer County;*
*J. W. Lawter, Judge.*

Proceedings by the State, on the relation of Cliff Caldwell, for writ of prohibition to C. E. Vaughn and others, as the County Election Board of Custer County. From a judgment sustaining a demurrer to the petition, the relator brings error. Affirmed.

*Geo. T. Webster* and *A. J. Welch,* for plaintiff in error.

*Charles West,* Atty. Gen., and *W. C. Reeves,* Asst. Atty. Gen., for defendants in error.

HAYES, J.   Plaintiff in error brought this action in the superior court of Custer county to obtain a writ of prohibition against the election board of that county to restrain it from placing the names of proposed candidates upon the primary election ballot for the office of clerk of the superior court of Custer county, and to prohibit said board from placing upon the general election ballots the names of any candidate or nominee for said office. Those who have applied to the election board to have their names placed upon the ballots at the primary to be held on the ———— day of August, 1912, as candidates for nominees of the respective parties, have been made parties defendant. Plaintiff in error, relator below, brings the action in the name of the state on his own behalf, after having requested the Attorney General and the county attorney, respectively, to bring said action, and they had refused to do so. Relator is the present clerk of the superior court of Custer county. He was duly elected to that office in November, 1910, and is now in the active discharge of his duties. He contends that by chapter 47, Sess. Laws 1910, the term of his office is fixed for four years from the second Monday in January, 1911; that said office is a state office; that the foregoing statute was not amended by section 19, c. 69, of the Session Laws of 1910; and that no statute has subsequently been passed

making said office a county or district office or changing the term thereof. Respondents filed a demurrer to relator's petition, which was sustained by the trial court, and it is from the judgment of that court sustaining the demurrer and dismissing plaintiff's petition that this proceeding in error is prosecuted.

Of the questions presented in counsel's brief, the only two that need be considered are: First, has the superior court jurisdiction to issue writs of prohibition for any other purpose than to carry into effect its orders, judgments, or decrees; and, second, will the writ of prohibition lie to an election board to prohibit it from placing the names of candidates for nominees of the respective parties for any office upon the ballot to be used at a primary election? The general act providing for the establishment of superior courts in certain counties of the state provides that such courts shall exercise concurrent jurisdiction with the district courts (section 2, art. 7, c. 14, Sess. Laws 1909), and the act creating the superior court of Custer county provides that it shall have and exercise the same jurisdiction as is provided by law for other superior courts of the state (section 1, c. 47, Sess. Laws 1910). Section 10, art. 7, Williams' Ann. Const., Okla., in part provides:

"The district courts, or any judge thereof, shall have power to issue writs of *habeas corpus,* mandamus, injunction *quo warranto, certiorari,* prohibition, and other writs, remedial or otherwise, *necessary or proper to carry into effect their orders, judgments, or decrees."* (Italics are ours.)

It is insisted by respondents that the italicized phrase of the foregoing excerpt limits the power granted to district courts to issue writs of prohibition to the issuance of same only when they are necessary and proper to carry into effect the orders and judgments of such courts. This construction, we think, is untenable. If this phrase limits the power granted to the courts to issue writs of prohibition, it also limits the power granted to issue writs of mandamus, injunction, and writs of *habeas corpus.* That the district courts of the state have power to issue these last-named writs in independent actions has been universally recognized by the courts and by the bar of the state. What was intended by

this provision of the Constitution was to confer upon said courts and the judges thereof the power to issue certain specifically named writs; and, in addition thereto, such other writs, remedial or otherwise, as might be necessary or proper to carry into effect the orders, judgments, and decrees of such courts. The phrase italicized by us was intended to limit only the purpose for which "other writs, remedial or otherwise," may be issued, and not the specifically named writs in the first phrase of the sentence; and the district courts of the state have power to issue writs of prohibition to inferior courts or tribunals exercising judicial power to restrain them from exercising powers not granted to them.

The function of the writ of prohibition as it existed at common law had not, prior to the adoption of the Constitution, been enlarged by statutory enactment; nor has it been so enlarged since. In conferring upon the district court power to issue this writ, it was intended to authorize the writ as it existed at common law. *Baker v. Newton et al.*, 22 Okla. 658, 98 Pac. 931.

"At the common law the writ of prohibition was issued on the suggestion that the cause originally, or some collateral matter arising therein, did not belong to the inferior jurisdiction, but to the cognizance of some other court. 3 Shars. Blackst. Com. 112. It was an original remedial writ provided as a remedy for encroachment of jurisdiction; its office was to restrain subordinate courts and inferior judicial tribunals from exceeding their jurisdiction." (*Spring Valley W. W. v. S. F.*, 52 Cal. 111.)

Discussing the purpose of the writ, it is said at paragraph 1722, Spelling on Injunctions and Other Extraordinary Remedies:

"Courts almost universally preserve the original common-law features of the writ of prohibition, and confine its use to the prevention of usurpation or excess of jurisdiction by courts and bodies possessing, for certain purposes and in certain instances, quasi judicial powers."

The statute makes it the duty of the secretary of the state election board to transmit to the secretary of each county election board a notice in writing, designating the offices to which candidates are to be nominated at the primary election, and, upon

receipt of that notice, the secretary of the county election board is required to give written notice to the inspectors of the election in the various precincts in which he shall state the names of all offices for which nominees are by law to be chosen at such precincts; and it is made the duty of the precinct election inspectors, upon receiving such notice from the secretary of the county election board, to post a notice in three places in the precinct in which he shall give the names of all county or township offices for which the several political parties shall nominate candidates. The person desiring to become a candidate before any such primary election for a political party nominee shall petition the proper official to have his name printed upon the ticket of the political party whose nomination he seeks. All nominating petitions for county and township offices are required to be filed with the secretary of the county election board. Sections 3278-3280, Comp. Laws 1909. The officers charged with giving notice of what officers will be elected at the coming election and of receiving applications for nominees for such offices have construed the statute as requiring the election of the clerk of the superior court; and the county election board, respondent herein, is proceeding to place upon the ballot for the primary election the names of those who have petitioned it for such purpose. The matter of placing the names upon the ballots for these various offices is a purely ministerial duty, and involves the exercise of no judicial power. If the election board be mistaken in the requirement of the statute as to the election of the clerk of the superior court, its act binds no one; it can render no judgment; and the placing of the names upon the primary ballot, and later of the nominees of the respective parties upon the general election ballot, cannot in any way deprive relator of his office, if his term of office is for four years, instead of two years, and does not expire until January, 1915, instead of January, 1913. A certificate of election to any candidate prevailing at the general election will not have the effect to oust relator from office, for the election board is not vested with any judicial power to determine the rights between parties.

In *Montgomery v. State Election Board et al.,* 27 Okla. 324, 111 Pac. 447, plaintiff sought a writ of *certiorari* to the state election board and to one of the county election boards of the state, directing them to certify to this court a record of all proceedings had by said boards with reference to the resignation of a member of the county election board and the appointment of his successor. In denying the writ, this court said:

"This board is a part of the executive department of the state, charged with the duty of the execution of all laws in force in the state relating to the holding of elections. It can exercise neither legislative nor judicial functions except as the same are merely incidental to the administration of its duties as a board of the executive department. It is not such a board or commission as judicial power may be vested in pursuant to article 7, sec. 1, of the Constitution. * * *"

In *People v. Election Commissioners,* 54 Cal. 404, relator charged that the board of election commissioners had, without authority of law, called an election for the purpose of electing freeholders to prepare and propose a city charter, and he sought a writ of prohibition to restrain them from holding the election; but the court held that the acts sought to be restrained in no manner constituted the exercise of judicial power, and that, whether they were legislative or simply ministerial, a writ of prohibition would not lie to restrain them. The foregoing case, we think, is in point here, and is in harmony with the well-settled doctrine of the courts that ministerial and executive functions cannot be controlled or regulated by prohibition. *State ex rel. v. Hawkins,* 130 Mo. App. 41, 109 S. W. 77; *La Croix v. County Commissioners of Fairfield County,* 49 Conn. 591; 32 Cyc. p. 602.

In receiving applications of candidates to have their names placed upon the primary ballots and in placing the same thereon, the county election board is engaged in a purely ministerial duty, and in the exercise of a ministerial or executive power; and if it makes mistakes in the exercise of this power, by placing the names of persons on the ballot as candidates for an office for which no election under the law can be held, it does not exercise or assume any judicial power by such act; and it cannot be restrained by a writ of prohibition.

It follows from this conclusion that the judgment of the trial court sustaining the demurrer should be sustained.

WILLIAMS and KANE, JJ., concur; TURNER, C. J., and DUNN, J., absent, and not participating.